## DOUTT v. DOUTT.

No. 9013—Opinion Filed Oct. 22, 1918.

(175 Pac. 740.)

**1. Divorce—Allowance of Permanent Alimony—Discretion of Trial Court.**

Where a divorce is granted the wife by reason of the fault of the husband, the allowance of permanent alimony rests in the sound judicial discretion of the trial court, and is to be exercised with reference to established principles, and on a view of all the circumstances, such as the husband's estate and ability at the time the divorce is granted, the wife's condition and means, and the conduct of the parties.

**2. Same—Allowance—Reasonableness.**

Upon the consideration of the entire record in the instant case, it is found that the award of alimony to the wife was not unfair or unreasonable, and was justified by the facts disclosed by the evidence.

(Syllabus by Galbraith, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action for divorce by Nora B. Doutt against Harry L. Doutt. Judgment for plaintiff, allowing alimony, and defendant brings error. Affirmed.

Pat Malloy, for plaintiff in error.

McGuire & Devereux, for defendant in error.

Opinion by GALBRAITH, C. The instant case is an appeal by the husband from the decree of the trial court granting the wife an absolute divorce, and awarding her as permanent alimony the greater amount of the property accumulated during the existence of the marriage relation between the parties. The ground of the divorce was the adultery of the husband, alleged to have been committed with a 15-year old orphan girl, a member of his family. The divorce was not contested, except the husband denied the facts alleged as grounds therefor, and made a counter charge of extreme cruelty against the wife, and prayed a decree in ..... .. .. ... that ground. The judgment of the trial court recites in part as follows:

"And the court, having heard the evidence and argument of counsel and being fully advised in the premises, finds all of the issues in favor of the plaintiff, and that the allegations of her petition are true. The court further finds that the plaintiff, Nora B. Doutt, has the legal title to the grocery store building, and the lot upon which it is situated, in Owasso, Oklahoma, and 170 acres of real estate set forth in the pleadings of the parties and described in the evidence, situated in Tulsa county, Oklahoma. And the court further finds that the plaintiff, Nora B. Doutt, has contributed to the joint property of the parties about three times as much as the defendant, Harry L. Doutt, who contributed $350, and that the real estate set cut in the pleadings and evidence was purchased by Nora B. Doutt and the title taken in her name; that the defendant, Harry L. Doutt, has collected accounts due for the groceries sold out of the store conducted by the plaintiff and the defendant in Owasso, Oklahoma, to the amount of several hundred dollars, the exact amount being left in doubt by said Doutt in his testimony, since the institution of this action; and that in addition thereto the said defendant is the owner of certain hogs, cows, and horses now on said land, which have been fed and provided for entirely at the expense of the plaintiff since the institution of this action. The court further finds that the interest of Harry L. Doutt, if any, in the real estate does not amount to over $300 or $400, which should be awarded to the plaintiff as permanent alimony.

"It is therefore considered, ordered, and adjudged that the title to the grocery store and the lot upon which it is situated, in Owasso, and the residence and lot upon which it is situated, in Owasso, and the 170 acres of land described in the pleadings and evidence, be confirmed in the plaintiff, Nora B. Doutt, and that the interest, if any, which the said Harry L. Doutt might have in said land, or any of it, be and the same is hereby awarded to the plaintiff as alimony."

The decree is attacked by the following assignments of error:

"(1) The want of power and jurisidiction in the court to make the same, affecting the property rights as it does. (2) That the division of the property provided in the decree is unfair and unjust to the husband. (3) The decree is contrary to law. (4) Error in excluding competent and relevant testimony at the trial."

The facts, briefly stated, are as follows: The plaintiff in error was 33 years of age when married to the defendant in error, and was 46 years of age at the time of the trial in December, 1916. The parties were married in Kansas and removed to Bartlesville, Okla., and the husband was a tool dresser and followed this business for something like a year after marriage, when they removed to the town of Owasso, in Tulsa county, Okla., and there purchased a grocery stock, lot, and store building, the grocery stock amounting to the sum of $300. At the time of the marriage the husband had something like $200 or $300, and the wife had something like $300 or $400. This was the capital that the parties had to begin married life. The wife received from her mother's estate the sum of $1,300, which was put into the business and invested in property. The grocery business at Owasso was conducted for about 12 years and had grown until the inventory thereof, just prior to the trouble, amounted to upwards of $4,000. The parties, while living together, acquired 170 acres of land in Tulsa county, located in three separate tracts, and the building and lot where the grocery business was conducted in town. The title to the real estate was taken in the name of the wife, and the grocery business was conducted in the name of the husband; she contending that the title was taken in her name because it was her money that paid for the property, and he contending that the title was so taken as a matter of safety, so that in the event that the grocery business failed they would have the real estate on which to start anew. In October, 1913, an orphan girl 13 years of age was taken into the family; they having no children of their own. In June, 1915, the girl gave birth to a child and accused the husband of being the father thereof. He was arrested on a criminal complaint filed by the girl, and thrown into jail, and the grocery store closed, and afterwards taken over by the creditors.

The decree, it will be observed, confirms the title of all the real estate, including the town lot in Owasso and the 170 acres of land in the country, in the wife, and finds that the husband's interest in the land does not

exceed $400, and divests that interest by decreeing the same to the wife as permanent alimony, leaving the husband with a sum of money, the exact amount of which is uncertain. He testified, "several hundred dollars" and certain live stock, the value of which is not determined.

There is not any serious question as to the power and jurisdiction of the court to make the character of the decree entered by the trial court in this action, under section 4969, Rev. Laws 1910. This statute empowers the court to make such award and division of the property as it thought reasonable in the light of the evidence. From a consideration of the evidence in the record we would not be inclined to disturb the decree, if the plaintiff had been stripped of all the property on account of his reprehensible conduct. As to the power of the court under this section of the statute, this court said in the case of Hildebrand v. Hildebrand, 41 Okla. 306, at page 313, 137 Pac. 711, at page 713:

"Finally, it is urged that the court erred in its decree awarding alimony in property valued at over $10,000. The statute authorizing an award of alimony (section 4969, Rev. Laws 1910) provides that, when a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the property which came to him by marriage, and the value of his real and personal estate at the time the decree is rendered, which alimony may be allowed to her either in real or personal property, or both. The plain letter of the statute, therefore, gave to the trial court the right to make such an award as it thought reasonable in the light of the evidence adduced. The rule announced is in full harmony with the very general rule that the allowance of permanent alimony is a matter of sound judicial discretion, to be exercised with reference to established principles, and upon a view of all the circumstances of each particular case, such as the estate and ability of the husband, the condition and means of the wife, and the conduct of the parties. Adams v. Adams, 30 Okla. 327, 120 Pac. 566; Viertel v. Viertel, 212 Mo. 562, 111 S. W. 579; McConnell v. McConnell, 98 Ark. 193, 136 S. W. 931, 33 L. R. A. (N. S.) 1094; Huffman v. Huffman (53 Ind. App. 201) 101 N. E. 400; Call v. Call, 65 Me. 407; Winkler v. Winkler (104 Miss. 1) 61 South. 1 (Ann. Cas. 1915C, 1250); Wyrick v. Wyrick, 88 Neb. 9, 128 N. W. 662; McCarthy v. McCarthy, 143 N. Y. 235, 38 N. E. 288; Blair v. Blair (40 Utah, 306) 121 Pac. 19 38 L. R. A. (N. S.) 269 (Ann. Cas. 1914D, 989); Harris v. Harris, 31 Grat. (Va.) 13."

This statute clearly vested the court with power and authority to make the decree appealed from, and the disposition of the property does not seem to be unfair or unjust under the circumstances disclosed by the record.

Again, the plaintiff in error complains that the court erred in excluding the testimony offered to prove his reputation for morality in the neighborhood where he lived. Even if this were error, and it is not clear that it was, it would not justify a reversal of the decree. There is evidence in the record, and not denied, that the husband and the girl and her companion often spent the night at the farmhouse in the country while the wife remained in town attending the store. The fact that some of the neighbors thought the man to be a moral man would not prove him guiltless of the offense charged. The trial court heard the witnesses testify, and had an opportunity to observe their demeanor on the stand, and therefore was in a much better position to pass upon their credibility than we are upon the printed record. This fact naturally impels us to give much weight to the findings of the trial court. A consideration of the evidence fails to convince us that the finding of the court below was wrong. We are not willing to disturb the same, and therefore consider that the decree appealed from should be affirmed.

It is so ordered.

By the Court: It is so ordered.