## WHITEHORN v. WHITEHORN et al.

No. 22170.   Sept. 18, 1934.

Withdrawn, Corrected, Refiled, and Rehearing Denied Oct. 23, 1934.

Henry S. Johnston, for plaintiff in error.

Gray & Palmer, for defendants in error.

BUSBY, J. This is a divorce action which originated in the district court of Osage county. It was commenced on August 26, 1930, by Florence Irene Whitehorn, as plaintiff, against her husband, Ralph Whitehorn, Osage Allottee No. 18. The guardian of Ralph Whitehorn was also named in the petition as a party defendant.

The parties to this action appear in the order of their appearance in the court below. They will be referred to in this opinion as plaintiff and defendant, respectively.

The plaintiff in her petition sought a decree of divorce on the grounds of extreme cruelty, habitual drunkenness, and adultery. She also sought the custody of a minor child, which had been adopted by the parties during their married life, alimony, and attorney's fees.

The case was contested by the defendant, who filed an answer and cross-petition denying generally and specifically the charges made in plaintiff's petition, and asking for a divorce by reason of the alleged extreme cruelty, gross neglect of duty, and infidelity of the plaintiff.

The trial of the case on the issues resulted in a judgment granting the plaintiff a decree of divorce, awarding her alimony in the sum of $7,000 and an automobile, directing the payment of $750 (less $150 previously paid) to her attorney, and decreeing that the child should be intrusted to the care of a third person. It was provided, however, that as a matter of temporary expediency, pending the selection of a proper third person, the child should remain in custody of the plaintiff, and that while in custody of the child the plaintiff be paid the sum of $50 per month for its care and support.

The case is brought to this court on appeal by the plaintiff, who complains of all portions of the judgment, except the decree annulling the marriage relation. She urges that the alimony should be increased from $7,000 to $50,000, that the attorneys' fee should be increased to $5,000, and that she should be awarded the custody of the adopted child.

We shall first consider that portion of the judgment fixing the amount of alimony to be paid.

In determining whether alimony should be paid, as well as the amount thereof, courts are vested with a wide range of discretion. This power of determination is neither arbitrary nor uncontrolled, and each proper element of the case claims its due share of consideration. As was said by this court in Dresser v. Dresser, 164 Okla. 94, 22 P. (2d) 1012:

"* * * Each case depends upon its own facts and circumstances, among which are: Whether the property is his separate property or a joint accumulation, and even if the latter, whose efforts principally resulted in its accumulation; duration of married life; whether the marriage be a marriage of affection or whether circumstances point to a marriage wholly or partly of convenience; whether the wife be somewhat at fault, and provoked ill treatment; the respective finan-

cial worth of the parties; and their conduct respectively as to frugality or wastefulness during the married life."

Similarly, in determining the amount of alimony the health of the wife is a proper element of consideration. 19 C. J. 259.

In cases where the finding or judgment of the trial court is contrary to the clear weight of the evidence, this court is vested with the power and charged with the duty to reverse or modify the decree appealed from. Stott v. Stott. 122 Okla. 266, 254 P. 722; Albert v. Albert, 120 Okla. 172, 251 P. 476; Newberry v. Newberry, 147 Okla. 249, 296 P. 202; Dresser v. Dresser, supra.

In order to determine the propriety of the judgment for alimony in this case, we have examined the record and reviewed the able and somewhat eloquent briefs prepared by counsel. No great value could be derived from a detailed review of the evidence in this case. It is sufficient to mention some of the salient circumstances warranting consideration.

The plaintiff and defendant were married in 1924, and lived together as husband and wife for about six years. No children were born of the marriage. However, during their married life the parties to this controversy adopted a girl.

At the time of their marriage plaintiff was strong and healthy. When this case was tried her health had been impaired as a result of a venereal disease communicated to her by her husband during cohabitation. Plaintiff had also undergone an operation as a result of this disease, which rendered it improbable or perhaps impossible for her ever to become a mother.

The finding of the trial court that the failure of the matrimonial union was due to the improper conduct of the defendant is amply supported by the evidence. However, it cannot be said that the conduct of the plaintiff was in all respects exemplary.

The value of defendant's property was variously estimated at the time of the trial at $100,000. to $140,000, of which approximately $100,000 was cash or cashable securities. His annual income was from $3,250 to $10,000 per year. Defendant's estate and income is a result of his connection with the Osage Tribe of Indians and not to the joint efforts of the parties to this litigation.

It is apparent from the record that the trial court assumed, largely by reason of the personal appearance of the defendant, that the plaintiff was prompted to enter into the bonds of matrimony by reason of the comparative wealth of the defendant rather than any genuine affection which she felt toward him, and that as far as she was concerned the marriage was one of convenience rather than affection. It is extremely unsafe to hazard a guess upon such appearance, since many marriages, where wealth is not concerned, would upon the application of a similar assumption become impossible of explanation.

It is not to be doubted that among members of the Osage Tribe, as well as others fortunate or unfortunate enough to have acquired a full measure of this world's goods, many have fallen the victims of unscrupulous persons through matrimony contracted under a guise of apparent but not genuine affection. Courts are and should be opposed to lending aid to such schemes. Of course, marriage for money is not unlawful in itself, and perhaps not especially reprehensible, if complete frankness as to motives prevails between the parties.

After a careful examination of the record, we are impelled to conclude that in determining the amount of alimony undue importance was attached by the trial court to the possibility that the marriage involved in the case at bar was prompted, as far as plaintiff was concerned, by pecuniary motives rather than affection, a possibility that was suggested to the court below largely by the physical appearance of the defendant. At the close of the trial the trial judge remarked:

"In sitting here yesterday and looking at the defendant in this case, if there is anything on earth that would make one come to the conclusion that we descend from monkeys, looking at this man would make you think it. He had the appearance and countenance of a gorilla. I would hate to be led to the belief that the plaintiff in this case married this man, loving him or because he was attractive. I am mindful of the fact that women, in choosing a husband, have the right, and should possibly consider the financial ability of the man whom they intend to marry to support them. They have the right to want a nice home, and to enjoy the things that other people enjoy, but marriages like the one before the court here are just revolting, to my mind, to decency.

"This girl is to be somewhat excused because she was young. She was seventeen or eighteen years old, I believe, when she married; her parents were poor people; they had placed her in the homes of some

Indians down there to do the housework, and she wanted to better herself in a financial way and made a terrible mistake. Just because of the fact that she was poor would not necessarily mean that she should not marry a respectable white man and have a modest home and enjoy her husband and family, but she could not be satisfied without an Osage Indian with a lot of money. That was her ambition, I think. She did not know any better then. She might know better now—I believe she does. As a result of this marriage she is diseased; she has ruined her health. Dr. Logan testified that, in his judgment, she would improve, but that that was no certainty by any means. That was the effect of his testimony. He further testified that, in his judgment, it would be practically impossible for her to bear children.

"I think this plaintiff in the case, and I so find and so hold, that she is entitled to a divorce. Her husband was guilty of about everything that a man could be guilty of violating the marriage relation; he contracted a loathsome disease, from which the plaintiff, his wife, is now, or was, suffering; he is an habitual drunkard—gets drunk every time he can; runs around with other women; all those things—whips and beats her and knocks her down; is just as cruel as he can be. So she is entitled, unquestionably, to a divorce, and she is entitled to some alimony—not so much alimony as damages, I think, for the condition that she is in.

"She had no right to assume, when she married this man, that her health would be injured like it is; she had no right to assume that she would contract some disease which would impair her physical condition, and she is entitled at least to damages by reason of that fact, whether or not she is entitled to alimony."

There was no proof in the record as to the actual motive which prompted plaintiff to marry the defendant, and, although the trial court may have been correct in his deductions as to such motive, we do not believe his award should be based largely upon such assumption. Therefore, considering the evidence in this case, which need not be reviewed in detail, the fact that the defendant lived with plaintiff for a period of six years. and her physical condition resulting from effects of the marriage, it is our judgment that the award of $7,000 for alimony should be increased to $12,500, without regard to sums for temporary alimony and suit money paid pending this opinion. The $750 allowance for attorneys' fees should be increased to $1,100, without interest, and without regard to the sums previously paid for conducting the litigation in the trial court and in this court. No accumulated interest is to be charged against the plaintiff on the $7,000 previously allowed or on the sum of $12,500 as fixed herein.

All monthly payments for alimony and support of the plaintiff as heretofore directed by this court shall end when this judgment becomes final. The trial court, however shall have authority to fix the monthly payments to pay for the care, custody, and maintenance of the adopted child, and order the same paid to whomsoever he hereafter decree the care and custody of said child. Judgment of the trial court is modified to conform to this decision, and as so modified is affirmed.

RILEY, C. J., CULLISON, V. C. J., and BAYLESS and OSBORN, JJ., concur.