## McCARTY v. McCARTY.

No. 30751. June 15, 1943.

Rehearing Denied Sept. 14, 1943.

*141 P. 2d 103.*

Rainey, Flynn, Green & Anderson, of Oklahoma City, and Biddison & Rheam, of Tulsa, for plaintiff in error.

Bailey E. Bell, of Tulsa, and Cantrell, Carey & McCloud, of Oklahoma City, for defendant in error.

PER CURIAM. These parties were originally married in 1917; were divorced in November, 1937, and were remarried in September, 1938. The defendant in error filed this suit for divorce and alimony in July, 1940.

Plaintiff in error urges that the granting of the divorce in this case is not warranted in law and is against the clear weight of the evidence.

The evidence fairly supports the conclusion that within some two or three months after the remarriage defendant actively displayed his indifference to his home and displeasure with plaintiff; that he became sullen and would refuse to remain in her company and presence; that he frequently absented himself from his home without apparent justifiable cause; that he indulged in frequent and excessive use of intoxicants, frequently returning home late at night in a high state of intoxication, and would employ obnoxious language in the presence of plaintiff and their two children (who were adults at the time of trial).

That defendant rarely allowed plaintiff to accompany him any place, but that when he did so he would generally become intoxicated and neglect her in such manner as to be publicly humiliating.

There was evidence, worthy of belief, that at least on one occasion he was seen entertaining a young woman in a private hotel room under circumstances reasonably susceptible of classification as "suspicious."

The record is voluminous and we feel

no need to undertake here the recording of the many details. We have carefully considered same in the light of the extensive briefs, and conclude that the trial court did not err in granting plaintiff a divorce on the grounds of gross neglect of duty and extreme cruelty. Hornor v. Hornor, 151 Okla. 292, 3 P. 2d 670; Stocker v. Stocker, 173 Okla. 64, 47 P. 2d 107.

Defendant further complains of the action of the trial court in awarding judgment against him for $10,000 alimony and $3,400 attorney's fee for plaintiff's, attorney.

In that connection we feel it necessary to discuss the present financial status of the parties, the source of their wealth in this particular instance, and other facts as will appear.

In 1917, when these parties were first married, they started their married life in very moderate circumstances, he being a young oil field worker. They lived modestly and through his diligent application to his work and their joint common frugality he had accumulated some $150,000 worth of property, and had become one of the principal directives in some two or three corporations in Tulsa, in which city they had lived since 1927. His salary from such corporations at the time of trial of this case was $1,000 per month.

Upon rendition of the first divorce in 1937 plaintiff was therein awarded some real estate and other property, and $36,000 payable in installments of $300 per month.

Shortly before the parties remarried, and in contemplation thereof, the parties entered into a written agreement whereby defendant agreed to convey to plaintiff one-half of all the property owned by him at the time of the first divorce, and in addition thereto to pay her the remaining balance of the first alimony award of $36,000. Conveyances were thereupon duly executed as to the property valued at approximately $75,000, which consisted principally of stock in his corporations. Not all of the monthly payments were met, but at the time of the trial of this case there remained due on the first alimony award $22,902.70, as found by the court. The contract was specifically affirmed by the trial court in this cause.

The present judgment affirmed and quieted the title of the respective parties under the written contract; directed defendant to continue in force for 19 years a life insurance policy of $10,000 with plaintiff as beneficiary. Allowed an additional sum of $10,000 as alimony payable at the rate of $200 per month; found that there was due under the contract a balance of $22,902.70 on the original alimony award, of which 1,-702.70 was adjudged to be delinquent, and directed that execution issue for such delinquent amount; and allowed judgment to plaintiff for $3,400 as attorney's fee and all costs.

The financial status of the parties, after the judgment, may be substantially stated as follows: Plaintiff owns property valued at $75,000, and in addition, judgment against defendant for $22,900 as balance on the first alimony award, and further judgment against defendant of $10,000 additional alimony, and $3,400 attorney's fee, making total assets, all originating out of property accumulated by the parties since first marriage, of $111,300. She has no financial obligations, save possibly some mortgage indebtedness on some real property which equals his. We therefore omit same from these calculations.

Defendant owns property valued at $75,000. He owes his corporations $29,-000; the judgment for $22,900 as representing balance on the first alimony award and the additional alimony award of $10,000, and attorney's fee of $3,400, making total liabilities of $65,300, and leaving defendant net assets of $9,700.

It is insisted in the briefs that defendant owns additional assets valued at $62,500. The record does not so reflect. The record shows that in December, 1937, defendant agreed with one of his business associates to take a half interest in an option to buy certain corporate stock. The business associate

held the option to purchase the stock for $125,000; $1,000 had been paid thereon, and remaining payments were equally divided over a period of 20 years, the deferred payment bearing 5% interest. Defendant's testimony is to the effect that the purchase price was too high and it is questionable whether such evidence is substantially contradicted. Be that as it may, however, the record would indicate that no substantial equity in such stock had accumulated in defendant at the time of trial. We do not consider plaintiff's contention in that regard of sufficient merit to influence the relative financial status of the parties to any appreciable extent.

The record further indicates that defendant held some life insurance policies. The briefs do not point out wherein the record discloses the present value of same. It is shown that either plaintiff or the son and daughter are the beneficiaries therein. We are not persuaded that these values, if any, are of great moment here.

Plaintiff in her brief would have us treat all of her property which was dealt with in the contract as her separate property and as such to have no bearing on our consideration here. We are not so inclined, under these facts. All of the properties herein involved were acquired by the parties during their married life, though there was a short intermission in their marital relations and though they contracted with reference thereto during the short period of time when they were divorced. It is apparent that the chief purpose of the contract was to accomplish a division of their jointly-acquired property.

Indeed, plaintiff's theory in the trial court was that her property rights as outlined under the contract were subject to enforcement in this action for divorce. She asked and received an order of the trial court directing the payment of certain installments claimed to be due under the contract, in addition to a $500 per month allowance, and $200 attorney's fee pendente lite. She asked and received in the court's final decree an approval of the contract and affirmance of the conveyances thereunder.

Under the present decree these parties, who have probably passed their most productive years, and whose children have been reared to maturity, continue their separate lives, she with net assets of about $107,900, after attorney's fee paid, with cash payments of $500 per month for many months from the cash awards of alimony, with income equal to his on her corporate stock. Defendant with net assets of about $9,700, with whatever income his personal and dividend earnings may be.

Although defendant may have transgressed to the extent of justifying the action of the trial court in granting plaintiff a divorce, we doubt that this record will justify stripping him of substantially all of his entire life's earnings while his former wife is given practically all of same, amounting to a small fortune.

It is not improbable that the judgment in that regard would completely destroy defendant financially, thus resulting in material financial loss to both parties.

Defendant's prior financial success would have seemed to depend in large measure upon his status with his several corporations. Plaintiff now owns as much stock therein as does defendant, and therefore has as much voice in the conduct of the business as does he.

We would be naive indeed were we to rely upon the assumption that defendant will in the future be as well intrenched in his employment therewith. We think it most probable that his personal earnings may be less in the future than in the past, due to these disturbances and to his advancing years.

Assuming, however, that his future earnings should be equal to the present, we find him burdened with monthly payments to plaintiff of $500 per month for some four years, and $300 per month for more than three years

thereafter. In addition he owes his companies $29,000, which evidently must be paid, and the $3,400 attorney's fee. He has annual obligations under the option to purchase the stock above mentioned, and premiums on insurance, and taxes and personal expenses must be paid. We think the award as made courts financial disaster.

Many former decisions are cited by the respective parties concerning the elements to be considered in awarding alimony, including Harden v. Harden, 182 Okla. 364, 77 P. 2d 721; Doutt v. Doutt, 73 Okla. 213, 175 P. 740; Hildebrand v. Hildebrand, 41 Okla. 306, 137 P. 711; Whitehorn v. Whitehorn, 169 Okla. 332, 36 P. 2d 943; Miller v. Miller, 186 Okla. 566, 99 P. 2d 515, and others.

We find none in conflict with our conclusions herein.

The whole matter is essentially equitable. Neither of the parties should be economically destroyed, and it would be unwise to command the risk of such destruction, when without doing so both parties may receive a reasonably substantial portion of their joint accumulations and thus lessen the chance of financial want.

We think the reversal of the trial court's judgment as regards the allowance of the additional $10,000 alimony is definitely required to promote the ends of equity and justice.

Plaintiff will then possess net assets of about $97,000, while defendant will have only something over $75,000, with debts of some $51,000 or a net worth of approximately $24,000.

If this result has appearance of being overgenerous to plaintiff, it is a result brought about directly by defendant's express agreement or contract above referred to.

, As to the attorney's fee. We conclude that plaintiff is entitled to an allowance therefor. Proper request was made therefor in the beginning, and a temporary allowance of $200 was made and paid. The court reserved determination of that item until conclusion of the trial, and then made an additional allowance of $3,400. The amount of that allowance was based in part upon the property recovery of plaintiff. However, the plaintiff was not entitled to any property recovery in excess of the property conveyed and money payments promised to plaintiff theretofore. We find the allowance of $3,400 additional attorney's fee at the conclusion of the trial was excessive.

However, the defendant in the trial court and in this court resisted the granting of a divorce. That necessitated extensive legal work in the trial court and in this court. The defendant is adjudged at fault, and therefore he is chargeable with her necessity to prosecute the divorce action. The action pended in the trial court for more than a year, during which time there were numerous appearances in court, and the trial itself consumed many days. The defendant's appeal also necessitated the appearance and briefing in this court. We conclude, under well-settled rules, that the defendant is properly chargeable with a reasonable sum to be allowed plaintiff for attorney's fee. Under the special circumstances here shown, and the evidence of record, we conclude that the allowance to plaintiff of $3,400 should be vacated, and in lieu thereof, and to cover legal services rendered in both courts, the plaintiff should have an allowance of $2,000 for attorney's fee.

The judgment of the trial court granting plaintiff a divorce is affirmed, and the further judgment of the trial court is modified to strike out the allowance of $10,000 alimony, and to strike out the former attorney's fee allowance, and to grant an allowance of $2,000 to plaintiff for attorney's fee. And the cause is remanded to the trial court, with directions to show the final judgment as so modified. The court costs of this appeal to be taxed to the plaintiff in error.

GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, C. J., dissents.